1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11 | ANTHONY BISPO,

12 |       Plaintiff,

13 |   v.

14 | COMMISSIONER OF SOCIAL SECURITY,

15 |       Defendant.

16
17
18

Case No.  1:20-cv-01457-SAB

ORDER REMANDING ACTION FOR FURTHER PROCEEDINGS

(ECF No. 20)

19

**I.**

20

**INTRODUCTION**

21      Plaintiff Anthony Bispo ("Plaintiff") seeks judicial review of a final decision of the

22 Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

23 Social Security Income (SSI) benefits pursuant to Title XVI of the Social Security Act.  The

24 matter is currently before the Court on the parties' briefs, which were submitted without oral

25 argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, the action

26 shall be remanded to the Commissioner for further proceedings.

27

---

28 [1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 8, 9, 10.)

1

## II.

2

## BACKGROUND[2]

3      On April 15, 2016, Plaintiff filed a Title XVI application for supplemental security

4      income (SSI) under the Social Security Act, alleging a period of disability beginning April 23,

5      1984.[3]  (Admin. Rec. ("AR") 20, ECF No. 13-1; but see AR 221, 291 (indicating application was

6      submitted on May 10, 2016).)  Plaintiff's claim was initially denied on August 2, 2016, and

7      denied upon reconsideration on January 9, 2017.  (AR at 184–87, 189–93.)

8      On March 9, 2017, Plaintiff requested a hearing before an Administrative Law Judge

9      ("ALJ").  (AR 202.)  On March 16, 2017, Plaintiff's request was granted.  (AR 203.)  Plaintiff

10     was advised that he would receive notice of the date of his scheduled hearing at least twenty days

11     before the date of his hearing.  In a letter dated September 5, 2018, Plaintiff was notified that his

12     hearing date was set for December 5, 2018.  (AR 219.)  With respect to submitting supplemental

13     medical records, the letter also provided:

14
15
16
17
**If you [Plaintiff] are aware of or have more evidence, such as recent records, reports, or evaluations, you must inform me [the ALJ] about it or give it to me no later than 5 business days before the date of your hearing.  If you do not comply with this requirement, I may decline to consider the evidence unless the late submission falls within a limited exception.**

18
19
If you missed the deadline to inform us about or submit evidence, I will accept the evidence if I have not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:

20          1.  Our action misled you;

21
22          2.  You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier, or;

23

24
25
[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

26
27
28
[3] As noted in the ALJ's decision, SSI benefits are not payable prior to the month following the month in which the application is filed.  (AR 20 (citing 20 C.F.R. § 416.335)); see also Wellington v. Berryhill, 878 F.3d 867, 872 (9th Cir. 2017) (a claimant is eligible for SSI once he becomes disabled, but cannot receive benefits for any period before his application date) (citing 42 U.S.C. §§ 1382(c)(2), (c)(7), 1382c(a)(3)(A)).  Therefore, the ALJ considered Plaintiff's alleged disability as of April 15, 2016.  However, to the extent Plaintiff's application was actually submitted on May 10, 2016 (see AR 221, 291), any potential benefits should derive from that date.

3. Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.

(AR 221 (emphasis in original).)

Plaintiff retained counsel on October 8, 2018.  (ECF No. 20 at 3; AR 239.)

In a letter dated December 6, 2018, Plaintiff was notified that his hearing had been postponed, and that he would receive a new hearing date at least seventy-five days in advance of the hearing.  (AR 250.)  The letter also directed Plaintiff to submit any additional evidence immediately.  In a letter dated January 7, 2019, Plaintiff's hearing before the ALJ was reset for April 3, 2019.  (AR 251.)  This notice letter contained the same information and advisements regarding submitting supplemental evidence as was provided in the September 5, 2018 letter.  (AR 253.)

On April 3, 2019, Plaintiff appeared before ALJ Craig Denney for his administrative hearing.  (AR 121–54.)  At the hearing, Plaintiff's counsel noted there was some very recent psychiatric treatment, which was not included in the administrative record.  (AR 124.)  The ALJ allowed an additional ten days for Plaintiff to supplement the record, *i.e.*, permitting Plaintiff to file supplemental records by April 15, 2019.  (ECF No. 20 at 3; AR 126–27.)  Plaintiff did not meet this deadline, but instead uploaded approximately ninety-three pages of supplemental records on May 20, 2019.  (ECF No. 20 at 3, 5.)  The ALJ issued his decision the same day.  (AR 17.)  In his decision, the ALJ found that Plaintiff was not disabled because he could perform other jobs that existed in significant numbers in the national economy.  (AR 17–28.)  It is undisputed that the ALJ's decision does not contemplate Plaintiff's untimely submitted supplemental records.

On June 11, 2019, Plaintiff sought review of the ALJ's decision by the Appeals Council on the basis that (among other reasons) "new and material evidence is being proffered which renders the decision contrary to the weight of the evidence."  (AR 286–87.)  Plaintiff additionally explained in his request that he was unable to timely submit the supplemental records to the ALJ within the ten-day extension the ALJ provided because the records were not received until after that date, but they were uploaded on May 20, 2019, that he just began seeking additional therapy from a new provider, and that he expected to submit a medical statement from that provider.  (AR

286.)

In a correspondence dated June 21, 2019, the Appeals Council granted Plaintiff's request for additional time to submit information, indicating it would not take action for twenty-five days (*i.e.*, until July 16, 2019).  (AR 12.)  The correspondence cautioned Plaintiff that, if Plaintiff did not submit anything by that deadline, the Appeals Council would conclude Plaintiff did not want to send any more information and would proceed with its action based on the record it had.  (AR 13.)  On July 28, 2019, Plaintiff uploaded a medical source statement issued on July 23, 2019, from his new medical treater, Dr. Gunda.  (ECF No. 20 at 5; AR 7–11.)

In an order dated August 6, 2020, the Administrative Appeals Judge for the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)  The notice of denial indicated the Appeals Council would only review the ALJ's decision under one of the following circumstances:

- The Administrative Law Judge appears to have abused his or her discretion.

- There is an error of law.

- The decision is not supported by substantial evidence.

- There is a broad policy or procedural issue that may affect the public interest.

- We [the Appeals Council] receive additional evidence that you [Plaintiff] show is new, material, and relates to the period on or before the date of the hearing decision.  You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision.  You must also show good cause for why you missed informing us or submitting it earlier.

(AR 1.)   The Administrative Appeals Judge noted Plaintiff submitted eighty-eight pages of medical records from OMNI Family Health dated June 6, 2016, to April 8, 2019, and five pages from Sateesh Gunda, M.D. with treatment beginning April 2, 2019.  (AR 2.)   In denying Plaintiff's request for review, the Administrative Appeals Judge issued the finding that Plaintiff's additional evidence "does not show a reasonable probability that it would change the outcome of the decision" and declined to "exhibit" the evidence.  (Id.)

Plaintiff filed this action on October 14, 2020, and seeks judicial review of the denial of

his application for SSI benefits.  (ECF No. 1.)  On November 8, 2021, Plaintiff filed an opening brief.  (ECF No. 20.)  On December 3, 2021, Defendant filed a brief in opposition.  (ECF No. 22.) Plaintiff did not file a reply and the matter was deemed submitted.

**III.**

**DISCUSSION**

Plaintiff stipulates that the ALJ fairly and accurately summarized the medical and non-medical evidence that was part of the administrative record at the time of issuance of his May 20, 2019 order.[4]  (ECF No. 20 at 3.)  Plaintiff asserts that the only issue currently before this Court is whether the Appeals Council improperly failed to consider his new evidence.[5]  Further, because the ALJ did not review or consider Plaintiff's supplemental records dating June 6, 2016, to April 8, 2019, or Dr. Gunda's July 23, 2019 medical source statement, Plaintiff claims the matter must be remanded to permit a new decision in which the ALJ develops the record and Plaintiff's new evidence is evaluated.  (ECF No. 20 at 7.)  The Court's analysis is limited to this issue.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001) (in determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision).

**A.    Review Standard for New Evidence Before the Appeals Council**

The Regulations govern when the Appeals Council is obligated to review additional evidence submitted after the ALJ issues a decision.  See 20 C.F.R. §§ 404.970 (applicable to applications for SSDI benefits), 416.1470 (applicable to applications for SSI benefits) (eff. Jan. 17, 2017).  Pursuant to the regulations in effect at the time of Plaintiff's appeal, the Appeals Council "will review a case if . . . the Appeals Council receives additional evidence that is new,

---

[4] The Court notes Plaintiff's stipulation only speaks to the accuracy of the ALJ's summary of original evidence and does not stipulate that the ALJ's decision, if based solely on the current administrative record, was correct; however, Plaintiff also presents no argument in the alternative that, if the supplemental records were properly excluded, the ALJ's decision was made in error.  See also, e.g., Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017) (holding that "a lack of support from the 'overall medical evidence' is . . . not a proper basis for disregarding" lay testimony observations of a claimant's symptoms).  Thus, if the Court had affirmed the Appeal Council's rejection of Plaintiff's supplemental records, any such argument would have been deemed waived.

[5] Defendant similarly characterizes the issue before the Court as being one of whether the evidence submitted to the Appeals Council after the ALJ issued his decision denying benefits was properly considered.  (ECF No. 22 at 1–2.)

material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).  Additionally, the claimant must establish good cause exists for the late submission.  20 C.F.R. § 416.1470(b).

### B.    Whether the Appeals Council "Considered" the Evidence

The Ninth Circuit has "routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence."  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("we hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007) (noting that when the Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the additional evidence submitted to the Council).

However, the Ninth Circuit distinguishes evidence the Appeals Council has "*considered*" from evidence the Appeals Council has merely "*looked at*" to determine whether the additional evidence was incorporated into the record.  Evidence the Appeals Council *considered* becomes part of the administrative record as "evidence upon which the findings and decision complained of are based."  Brewes, 682 F.3d at 1162.  Where "the Appeals Council only *looked at* the evidence," by contrast, "the new evidence did not become part of the record."  Amor v. Berryhill, 743 Fed. App'x 145, 146 (9th Cir. 2018) (emphasis added); see also De Orozco v. Comm'r of Soc. Sec., No. 1:18-cv-00817-SAB, 2019 WL 2641490 at *11 (E.D. Cal. Jun. 26, 2019) (observing Ninth Circuit distinguished between instances where the Appeals Council formally "considered" evidence and made it part of the administrative record with instances where the Appeals Council only "looked at" the evidence).  Importantly, where the Appeals Council only looks at the evidence and it does not become part of the administrative record, the  Court "may not consider it" unless Plaintiff carries the burden to demonstrate the evidence should have been

considered by the Appeals Council.  Amor, 743 Fed. App'x at 146; see also Lowry v. Barnhart, 329 F.3d 1019, 1024 (9th Cir. 2003).

Here, the entirety of the Appeals Council's reasoning for denying Plaintiff's request for review of the ALJ's decision with respect to Plaintiff's new evidence is as follows:

> You submitted medical records from OMNI Family Health dated June 6, 2016 to April 8, 2019 (88 pages), and from Sateesh Gunda, M.D., with treatment beginning April 2, 2019 (5 pages).  We find this evidence does not show a reasonable probability that it would change the outcome of the decision.  We did not exhibit this evidence.

(AR 2.)  Defendant argues the Appeals Council properly "considered" the supplemental records. The Court disagrees.  Based on the aforementioned holding, it is clear the Appeals Council did not make the supplemental records part of the administrative record.  Moreover, while Defendant proceeds to review and analyze Plaintiff's supplemental records in support of its argument that the ALJ's decision was proper, the Appeals Council provides no such analysis of the proposed new evidence (nor did the ALJ).  Accordingly, the Court finds the appropriate characterization of the Appeals Council's decision is that the Appeals Council merely "looked at" Plaintiff's supplemental evidence for purposes of denying Plaintiffs' request for review of the ALJ's decision, but did not "consider" it.  Brewes, 682 F.3d at 1162; Amor, 743 Fed. App'x at 146; De Orozco, 2019 WL 2641490 at *11.  As such, the Court may not review the supplemental records unless it finds Plaintiff carried his burden to demonstrate the evidence should have been considered by the Appeals Council.  See Amor, 743 Fed. App'x at 146; Lowry, 329 F.3d at 1024.

### C.    Whether Plaintiff Met His Burden with Respect to the New Evidence

When the Appeals Council fails to "consider" additional evidence that satisfies the requirements of §§ 404.970(b) or 416.1470(b), a remand for further administrative proceedings is appropriate.  Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011).  It is Plaintiff's burden to establish the evidence should have been considered by the Appeals Council under the Regulations.  Hawks v. Berryhill, No. 1:17CV1021, 2018 WL 6728037 at *4 (M.D.N.C. Dec. 21, 2018) (noting under the amended regulations, "a claimant's burden to have new evidence considered for the first time at the Appeals Council level" includes "a requirement

to show a reasonable probability of a different outcome").  As noted above, this burden includes establishing the evidence is new, material, and there is a reasonable probability that the additional evidence would change the outcome of the decision, it relates to the period on or before the date of the hearing decision, and good cause exists for the late submission.  20 C.F.R. §§ 416.1470(a)–(b).  While Plaintiff's argument is brief, for the reasons discussed herein, the Court is satisfied that Plaintiff has adequately met his burden.

       1.   <u>Good Cause Exists for the Late-Submission of Supplemental Records</u>

As an initial matter, the Court finds Plaintiff has met the good cause requirement. Plaintiff argues he established under 20 C.F.R. § 416.1470(b)(3)(iv) sufficient good cause for the Commissioner to accept the late-submitted supplemental records and consider them in his review. (ECF No. 20 at 6.)  Section 416.1470(b)(3) includes a non-exhaustive list of several "examples" of circumstances under which good cause may be established due to some unusual, unexpected, or unavoidable circumstances beyond the claimant's control that prevented him from submitting the evidence earlier.  The example under subpart (3)(iv) provides "you actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing."  20 C.F.R. § 416.1470(b)(3)(iv).

Plaintiff proffers he retained counsel on October 18, 2018, which provided limited time to obtain copies of supporting medical records for his claim.  (ECF No. 20 at 3.)  Plaintiff also proffers the records were difficult to come by "because of the family's lack of insurance and means to provide treatment that is generally not helpful anyways when dealing with a lifelong disability such as autism," and because past medical providers were unwilling to provide a medical source statement or narrative describing Plaintiff's disability, and Plaintiff was required to begin treatment with a new provider (Dr. Gunda) on April 2, 2019.  (<u>Id.</u> at 3, 5.)  Nonetheless, Plaintiff submits he diligently attempted to obtain the required records, but did not receive them in time to submit them to the ALJ for review prior to the hearing date.

Defendant does not oppose Plaintiff's good cause arguments and instead appears to concede this point by only arguing the Appeals Council properly considered Plaintiff's supplemental records.  (<u>See</u> ECF No. 22 at 5.)  Accordingly, the Court finds Plaintiff has

1    sufficiently met the good cause requirement under § 416.1470(b)(3)(iv).

2         2.    Plaintiff's Evidence Relates to the Period on or Before the Date of the Hearing
3               Decision

4         This requirement is easily met.  The ALJ issued his decision on May 20, 2019.  Plaintiff's

5    supplemental records pertain to treatment received between June 6, 2016, to April 8, 2019.  Dr.

6    Gunda's medical source statement, though issued on July 23, 2019, also pertains to Dr. Gunda's

7    evaluation and treatment of Plaintiff during the period of the related medical records.  Finally,

8    Defendant does not oppose a finding that the supplemental records are confined to the appropriate

9    time period and thereby waives such argument.  Accordingly, Plaintiff has met his burden as to

10   this requirement.

11        3.    Plaintiff's Evidence is "New"

12        Evidence is new if it is not duplicative or cumulative.  Meyer v. Astrue, 662 F.3d 700,

13   704–05 (4th Cir. 2011).  In addition, evidence can be deemed new if it was not available when the

14   ALJ issued the decision.  Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003).  Here, it is

15   undisputed that the records were not available when the ALJ issued his decision, but were only

16   submitted to the Appeals Council thereafter.  Nor are the records duplicative.  To the contrary,

17   while Plaintiff's medical records contained in the AR mainly focus on his physical impairments

18   relating to venous insufficiency, right leg pain and ulcer, the supplemental records pertain to

19   Plaintiff's mental health treatment, which was identified in the medical records incorporated into

20   the administrative record, but lacked elaboration.  Accordingly, the records are deemed "new" for

21   purposes of § 416.1470(a)(5).

22        4.    The Evidence is Material and There is a Reasonable Probability that the Evidence
23               Would Change the Outcome of the Decision

24        To be material, "the new evidence must bear directly and substantially on the matter in

25   dispute."  The claimant must also "demonstrate that there is a reasonable possibility that the new

26   evidence would have changed the outcome" of the disability determination.  Mayes v. Massanari,

27   276 F.3d 453, 462 (9th Cir. 2001) (citation and quotation marks omitted).

28        Plaintiff claims, and the ALJ similarly found, that Plaintiff has the severe impairments of

depression, anxiety with agoraphobia and obsessive-compulsive disorder, and autism.  (ECF No. 20 at 2; AR 22.)   The supplemental records concern Plaintiff's complaints and treatment regarding these mental health impairments.  Dr. Gunda's medical source statement also directly pertains to these impairments.  Thus, the supplemental records are material.  <u>Mayes</u>, 276 F.3d at 462.

To evaluate whether there is a reasonable probability that the new evidence would change the outcome of the ALJ's decision, the Court briefly summarizes Plaintiff's claims and new evidence, and the ALJ's denial based on the original evidence only.

### a.    Plaintiff's Symptom Testimony

Plaintiff maintains he suffers from psychiatric, cognitive development, and vascular issues, in addition to problems in his lumbar spine, his most severe impairments being related to his psychiatric condition.  (ECF No. 20 at 4.)

At the April 3, 2019 hearing, Plaintiff, thirty-four-years old, testified that he lives with his parents, sleeps in the same room as them, does not have a driver's license, does not have any money and cannot manage money, attended high school until grade twelve but did not graduate, and has not worked since 2005.  (AR 128–29, 135, 139.)  Plaintiff testified he is unable to work because he has too much social anxiety, he has agoraphobia, and he cannot be around people a lot of the time.  (AR 130.)  Plaintiff has to vacuum, then mop, then clean the counters, and then vacuum again, every day immediately after waking up, in order to "sterilize" all the areas his parents have touched in the house.  (AR 131.)  Plaintiff does not go outdoors or take out the trash.  (AR 132.)  He does not use the computer or phone.  (AR 133.)  He does not have any friends or visitors.  Plaintiff testified he used to be able to play video games and watch movies, but he cannot do even those things anymore.  (<u>Id.</u>)  Plaintiff testified that he suffers from PTSD from being admitted into the hospital after his first suicide attempt, and that he doesn't treat a lot for his psychiatric condition because he can't get out of the house.  (AR 134–35.)  Plaintiff testified that he suffers from OCD and autism (Asperger's).  (AR 136.)

Plaintiff's mother, Rosemary Bispo, testified that Plaintiff spends all his time cleaning the same spaces over and over again.  (AR 143.)  She testified that Plaintiff has had three or four

suicide attempts to date, which is why he sleeps in the same room as her.  (AR 142.)  She disagreed with Dr. Zhang's assessment that Plaintiff was capable of carrying out simple instructions because when she instructed Plaintiff to do anything, he may not agree with it and not do it anyway.  (AR 144.)  Plaintiff sometimes has fits and starts screaming at his parents, which has resulted in physical altercations — Ms. Bispo believes these outbursts are due to Plaintiff's autism and Tourette's syndrome.  Ms. Bispo testified that Plaintiff lost between eighty to one hundred pounds in the last year because he was obsessed with cleaning, wouldn't let her cook for him, and wouldn't eat.  (AR 145.)  Ms. Bispo testified that the reason Plaintiff has not received a lot of psychiatric treatment is because of his fear of people, his refusal to leave the house (his agoraphobia), and because insurance wouldn't cover it/Plaintiff's parents' inability to pay for treatment.  (AR 146.)

**b.      The ALJ's Decision**

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920.[6]  (AR 17–28.)  At step one, the ALJ found that claimant had not engaged in substantial gainful activity since April 15, 2016, the application date.  (AR 22.)  At step two, the ALJ found that claimant had the severe impairments of depression, anxiety with agoraphobia and obsessive-compulsive disorder, and autism (formerly referred to as Asperger's Syndrome).  (Id. (citing 20 C.F.R. § 416.920(c)).)  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.  (Id.)

Before proceeding to step four, the ALJ determined that Plaintiff had moderate limitations with respect to understanding, remembering, or applying information; interacting with others; and

---

[6] The five steps in the sequential evaluation in assessing whether the claimant is disabled are: (1) Is the claimant presently engaged in substantial gainful activity?  (If so, the claimant is not disabled.  If not, proceed to step two); (2) Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  (If so, proceed to step three.  If not, the claimant is not disabled); (3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  (If so, the claimant is disabled.  If not, proceed to step four); (4) Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  (If so, the claimant is not disabled.  If not, proceed to step five); and (5) Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  (If so, the claimant is not disabled.  If not, the claimant is disabled).  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

concentrating, persisting, or maintaining pace.  (AR 23.)  The ALJ determined Plaintiff had a mild limitation with respect to adapting or managing himself.  (Id.)  The ALJ determined Plaintiff's residual functional capacity (RFC) permitted him to perform a full range of work at all exertional levels, but with the following non-exertional limitations: he could occasionally interact with supervisors and coworkers, but never interact with the general public; he could never perform work at fast-paced production, such as assembly line work or work involving a conveyor belt, and he could understand, remember and carry out simple, repetitive tasks and instructions (but not detailed or complex tasks and instructions).  (Id.)

At step four, the ALJ found Plaintiff could not perform past relevant work because he had no past relevant work.  (AR 26–27.)  At step five, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy, specifically the jobs of laundry laborer, industrial cleaner/sweeper, hand packager, marking clerk, and inspector hand packager.  (AR 27.)  Therefore, the ALJ found Plaintiff was not disabled.  (AR 28.)

In reaching this decision, the ALJ considered Ms. Bispo's report — which was consistent with Plaintiff's testimony.  (AR 24–25.)  However, the ALJ accorded Plaintiff and Ms. Bispo's reports "partial weight" because they were not entirely supported by the objective medical record.  (AR 25.)  More specifically, the ALJ noted he discounted Plaintiff and Ms. Bispo's allegations because, other than the State consultants' opinions, there were no other medical opinions regarding Plaintiff's condition and "[Plaintiff's] allegations alone are insufficient to establish a disabling condition."  (AR 26.)  The ALJ also found the evidence was insufficient to establish Plaintiff's physical conditions were severe for a continuous period of at least twelve months.  (AR 25.)  To that point, the ALJ noted Plaintiff submitted very little medical records to establish disabling conditions, and that the records only pertained to 2016 and did not establish disabling conditions covering the entire period at issue.  (Id.)  Moreover, the ALJ found the medical records in which Plaintiff was treated for venous insufficiency and a chronic ulcer in his lower right leg did not indicate Plaintiff was also treated for any mental health conditions at that time, though they did note past histories of autism, Tourette's, and spina bifida.  (Id.)  The ALJ also discounted Plaintiff and Ms. Bispo's testimony on the basis that Plaintiff did not seek much treatment for any

of his purported conditions.  (Id.)

A state agency psychological consultative examination was completed in June 2016, in which the examiner assessed Plaintiff with narcissistic and dependent personality disorder and mild autism spectrum disorder, and opined that Plaintiff was only moderately impaired in his ability to interact appropriately with coworkers, supervisors and the general public, perform work without special or additional supervision, and respond appropriately to usual work situations and changes in routine work settings.  (AR 25–26.)  The ALJ accorded partial weight to this opinion, due to the examiner's limited interaction with Plaintiff, taking Plaintiff and Ms. Bispo's testimony into account and finding Plaintiff more limited in his mental functioning.  (AR 26.)  The ALJ similarly accorded only partial weight to the State psychological consultant's opinion, again because he found Plaintiff was more limited than the examiner opined.  (Id.)

The ALJ declined to find any medically determinable impairments of venous insufficiency in the right leg or a right leg skin ulcer, on the basis that there was insufficient objective medical evidence demonstrating those impairments caused — either singly or in combination with Plaintiff's severe impairments — more than a minimal effect on Plaintiff's ability to perform basic mental or physical work activities.  (AR 22.)

**c.**     **Summary of New Evidence**

i.     <u>OMNI Records (June 6, 2016, through April 8, 2019) (AR 33–120)</u>

Plaintiff was seen by Dr. Young Park in June and August 2016 for treatment of his right leg, chest pain, change in appetite, difficulty falling asleep, anxiety, difficulty concentrating, and feeling down/depressed/hopeless, with little interest or pleasure in doing things.  (AR 34–38.)  Dr. Park diagnosed Plaintiff at that time with moderately severe depression, chest pain, OCD, and cellulitis.  Follow-up appointments in August 2016 related to treatment of Plaintiff's right leg, which was infected, yielded positive exam results for edema and skin lesion/ulcer, noted the condition was not improved and getting worse, and it appeared to be an ulcer at least stage III. During Plaintiff's August 25, 2016 appointment, his mother explained to the intake nurse that they tried to find wound care, but their insurance wasn't accepted, and Plaintiff was directed to go to the emergency room, if his condition got worse (which he ultimately did).  While the main

focus of Plaintiff's 2016 appointments was treatment of his leg, the records additionally note Plaintiff's medical history of autism and OCD.

Plaintiff's next encounters at OMNI occurred approximately a year later, in June and July 2017. Plaintiff recounted that in March 2017, he was given antibiotics to treat the ulcer on his right leg and admitted to the hospital. In June, the ulcer was assessed as ongoing, and Plaintiff was also treated for rashes appearing on his chest. (AR 48–49.) The medical records from 2017 again note Plaintiff's history of autism, OCD, and anxiety. (See AR 48, 53–58, 60.) Additionally, Plaintiff had various complaints about nausea, chest pain, an eye infection, rashes he has had for years, and his venous insufficiency. (See AR 48, 60, 69–70.) Plaintiff was supposed to follow up with Dr. Bui, who performed surgery on the ulcer on Plaintiff's right leg, about peripheral venous insufficiency. (AR 60.)

During an initial intake visit on June 14, 2017, Plaintiff complained of continuing and worsening symptoms of his autism, anxiety, and OCD. (AR 53–58.) Plaintiff reported feeling anxious, fearful, and having racing and compulsive thoughts; he reported thoughts of death/suicide; difficulty concentrating and falling asleep; diminished interest and pleasure; excessive worry; fatigue; feelings of guilt; loss of appetite; poor judgment, restlessness and being easily startled. Plaintiff reported he was diagnosed with developmental disability: autism. Plaintiff reported a family history of bipolar disorder (his sister), and a history of chronic illness, depression, relationship problems, social isolation, and unemployment. Plaintiff's mother reported Plaintiff has a fear of being around people; cannot be around family; is not able to cope; gets panic attacks every day; has trouble sleeping; was hospitalized in 2009 for mental health reasons; has Tourette's, and on one occasion, the neighbors heard him saying things and called the police. (AR 54.) After a documented suicide attempt in June 2017, Plaintiff was deemed a "medium" suicide risk. (AR 53–54.) A depression screening tool used during intake revealed Plaintiff had severe depression (his total score was 23). A functional assessment showed "current needs areas" for Plaintiff included: activities of daily living; behavior management, family, and social support; mental health/illness management with respect to anxiety; coping/symptom management skills; cognitive problems, compulsive behavior, and mood instability; and sleep

1   problems.

2       In 2018, Plaintiff had new complaints regarding problems with urination, testicle pain,

3   severe weight loss, and low back pain.  (AR 73–79, 80–90.)   Throughout 2018, Plaintiff's

4   ongoing conditions of anxiety, OCD, and autism were repeatedly noted; starting in August,

5   Plaintiff was additionally assessed for an eating disorder due to his drastic weight loss.  (See AR

6   73, 77, 80, 82–84, 86, 93, 95–97, 99, 103.)  On July 17, 2018, Plaintiff complained of feeling

7   tired and having no appetite, over-thinking stuff, and feeling like his mind was busy and

8   preoccupied.  (AR 73.)  He was assessed with fatigue, varicose veins in both lower extremities,

9   dysuria, mild tenderness on bilateral lower back, and poor appetite.  (AR 76.)  Plaintiff apparently

10  missed an appointment because he could not leave the house that morning due to his anxiety and

11  OCD.  (AR 86.)  On October 24, 2018, Plaintiff was seen due to his continued weight loss and

12  anxiety, and to follow up on other symptoms.  (AR 86–90.)   A general examination yielded

13  findings of bilateral skin darkening, and no ulcers noted.  But Plaintiff was assessed with weight

14  loss, fatigue, left testicular pain, and venous statis, and was referred for evaluation for vascular

15  surgery and/or treatment.

16      On October 29, 2018, Plaintiff participated in an intake encounter for purposes of review

17  by Dr. Gunda.  (AR 92–98.)  Plaintiff reported anxiety/OCD with respect to leaving his house or

18  being in public places, constantly cleaning, and getting panic attacks every day, and having

19  trouble sleeping.  Crowds, commotion, and loud noises overwhelm him.  Xanax "helps," but

20  apparently does not fully alleviate symptoms because Plaintiff's "OCD is extremely bad."

21  Plaintiff reported his autism/Tourette's causes him to become upset, blurt out things, yell, and

22  repeat himself constantly.  Plaintiff reported his autism was the basis of a developmental

23  disability diagnosis at some point.  Once, because of an outburst, his neighbors called the police.

24  He was hospitalized in 2009.  Plaintiff reported depression related to his isolation and guilt about

25  the burden he places on his family.  He stopped doing things he enjoyed, avoided his sisters, lost

26  his appetite, and has lost significant weight (100 pounds in past year).  General observations

27  yielded generally normal findings.  Yet, the mental status exam yielded findings of a

28  depressed/anxious   mood,   and   impairment   of   attention/concentration.   Plaintiff   was

diagnosed/assessed with anxiety, autism, and OCD (unspecified type).   He was deemed a "medium" suicide risk based on his June 2017 documented suicide attempt.

On November 12, 2018, Plaintiff underwent a psych evaluation with Dr. Vimal Satodiya. (AR 99–105.)  After reporting the same symptoms previously mentioned, Dr. Satodiya conducted a mental status exam with generally unremarkable findings, noting Plaintiff was in a euthymic mood and his thoughts, perception, cognition, insight, and judgment were "within normal limits," but nevertheless assessed Plaintiff with autism, anxiety, and OCD.  Dr. Satodiya also deemed Plaintiff a medium suicide risk due to his prior documented attempt in June 2017, despite Plaintiff's (present) denials of suicidal ideations during appointments in June 2017, October 2018, and November 2018.

On April 2, 2019, Plaintiff underwent a psychiatric diagnostic evaluation with Dr. Gunda. (AR 114–20.)  Plaintiff rated his mood as 3/10 (with 10 as the best).  In his medical history, Plaintiff reported his sister has bipolar disorder, he was previously diagnosed with a developmental disability (due to autism), and his medical/surgical history included heart disease. Plaintiff reported his loss of interest in activities he previously enjoyed; decreased sleep and difficulty falling asleep and maintaining sleep; and that he felt low-energy, hopeless and worthless.  Plaintiff reported his daily panic attacks, his need to avoid closed spaces and open spaces where escape is not possible, and his need to clean all the time, which Dr. Gunda described as "ritualistic."  Plaintiff noted he sleeps in his parents' room so that he doesn't continue to clean throughout the night.  Plaintiff again denied active suicidal ideations (though he acknowledged his previous attempts).  Dr. Gunda noted Plaintiff's sense of responsibility towards his family was a motivator to seek help.  A mental status examination yielded generally normal observations except for Plaintiff's anxious mood, and thought content was obsessional.  Dr. Gunda diagnosed Plaintiff with OCD, anxiety, and autism.  In Dr. Gunda's clinical judgment, Plaintiff was a "moderate-high risk."

ii.      Sateesh Gunda, M.D. (Medical Source Statement)

In a medical source statement dated July 23, 2019, Dr. Gunda evaluated Plaintiff for autism, obsessive-compulsive disorder, and anxiety.  (AR 7–11.)  Dr. Gunda started treating

Plaintiff on April 2, 2019, and reports continuing to treat Plaintiff monthly, though Plaintiff did not submit other records with his supplemental evidence.  Dr. Gunda noted Plaintiff's symptoms included: poor memory, appetite disturbance with weight change, sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, paranoid or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, oddities of thought, perception, speech or behavior, perceptual disturbances, time or place disorientation, social withdrawal or isolation, decreased energy, obsessions or compulsions, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, somatization unexplained by organic disturbance, hostility and irritability, and pathological dependence or passivity.

Dr. Gunda opined Plaintiff has significant OCD symptoms, to an extent that his ability to function is impaired, and that Plaintiff's autism adds to these OCD symptoms.

Dr. Gunda noted Plaintiff is currently taking Xanax, Trazodone, and Paxil for his symptoms, which result in side-effects of drowsiness, fatigue, and nausea.

Dr. Gunda opined Plaintiff's ability to understand, remember and carry out instructions was affected by his impairments.  More specifically, Dr. Gunda indicated Plaintiff suffered "extreme loss" of ability in, and therefore lacked capacity to: remember locations and work-like procedures; to understand, remember, or carry out either very short/simple or detailed instructions; maintain attention and concentration for longer than two-hour segments of time; sustain an ordinary routine without special supervision; deal with stress of semi-skilled and skilled work; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday or workweek without interruptions from psychologically-based symptoms; or perform at a consistent pace without an unreasonable number of rest periods.  Dr. Gunda opined Plaintiff suffered either a "marked loss" or an "extreme loss" with respect to his ability to interact with the public, ask simple questions or request assistance, get along with coworkers and peers, maintain socially appropriate behavior, respond appropriately to changes in a routine work setting, take appropriate precautions around

hazards, travel in unfamiliar places, or use public transportation.

With respect to functional limitations, Dr. Gunda opined Plaintiff suffered from extreme limitations regarding activities of daily living and social functioning; and that he constantly suffered from deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and episodes of deterioration or decompensation in work or work-like settings causing Plaintiff to withdraw from that situation or experience exacerbation of symptoms. Dr. Gunda further opined Plaintiff's impairments would cause him to be absent from work more than three times per month.

### d.   Analysis

Here, the Court finds that there is a reasonable possibility that the inclusion of the records would have changed the outcome of the disability determination because they bear on the severity of Plaintiff's mental health conditions and their impact on his functioning.  A prominent theme of the ALJ's denial of benefits was that there were insufficient medical records to corroborate Plaintiff and the third party's symptom testimony as to the severity of Plaintiff's impairments. The supplemental records provide additional support by elaborating on Plaintiff's mental health condition and treatment.  The records demonstrate Plaintiff has consistently complained of symptoms relating to his anxiety, depression, OCD cleaning habits, agoraphobia, and autism. Objective findings in the medical records — such as Plaintiff's extreme weight loss arising from his mental health issues (such as anxiety and OCD); his documented suicide attempt in June 2017, and reports of additional subsequent attempts; examinations that yielded results that Plaintiff suffered from various skin rashes, skin lesions/ulcer, chest pain, venous insufficiency and multiple infections; and assessments that Plaintiff was restless, severely depressed, fatigued and anxious — also lend support to Plaintiff's symptom testimony.  Importantly, the time period covered by the supplemental records from OMNI, which tend more to cover Plaintiff's mental health issues, overlaps with the records from Dignity Health Memorial Hospital that were incorporated into the administrative record, which focus nearly exclusively on Plaintiff's physical conditions.  Thus, consideration of the supplemental records would address the ALJ's concern that the medical records in which Plaintiff was treated for venous insufficiency and a chronic

ulcer in his lower right leg did not indicate Plaintiff was also treated for any mental health conditions at that time, and would reasonably result in a different finding.

The medical source statement by Dr. Gunda also corroborates Plaintiff's symptom testimony. Defendant argues the ALJ would likely not find Dr. Gunda's opinion persuasive because it is a check-the-box statement. (ECF No. 22 at 5–6.) The Court disagrees. While the Ninth Circuit has permitted an ALJ to "reject check-off reports that do not contain any explanation of the bases of their conclusions," Ford, 950 F.3d at 1155, it has also stressed that such an opinion cannot be rejected *merely* for being expressed as answers to a check-the-box questionnaire, Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017). Further, while Defendant argues Dr. Gunda's opinion is not supported by the evidence because it was based on only three months of direct treatment which are not included in the supplemental records, the Court finds Dr. Gunda's opinion finds additional support in the other supplemental medical records Plaintiff submitted. Notably, Dr. Gunda evaluated and treated Plaintiff himself on April 2, 2019. Medical records from Plaintiff's October 29, 2018 appointment expressly indicate the records were submitted for Dr. Gunda's review. And, because Dr. Gunda is a provider with OMNI, it may reasonably be inferred that Dr. Gunda had access to and reviewed Plaintiff's prior treatment records generated at OMNI in preparation of his medical source statement. Finally, the Court notes the ALJ must explain the weight he gives to all medical source opinions. See 20 C.F.R. § 404.1527(c). More specifically, because Plaintiffs' application was filed before March 27, 2017, the treating source rule applies, i.e., a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Thus, even though the State consultants asserted opinions of non-disability, because Dr. Gunda is a treating physician and the State consultants were examining physicians, Dr. Gunda's opinion would carry more weight. Thus, the ALJ could only discount Dr. Gunda's opinion if he articulated specific and legitimate reasons for doing so that were supported by substantial evidence.[7] Id.; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Lester v.

---

[7] It also bears mentioning that one of Defendant's biggest arguments for rejecting the supplemental records is that,

1    Chater, 81 F.3d 821, 830–31 (9th Cir. 1995).

2         Another basis for the ALJ's decision was the finding that the evidence was insufficient to

3    establish Plaintiff's conditions were severe for a continuous period of at least twelve months.   The

4    supplemental records alleviate this issue.   That is, while the medical records incorporated into the

5    administrative record span from August 30, 2016, through December 8, 2016, Plaintiff's

6    supplemental records cover the period from June 6, 2016, to April 8, 2019 (and Dr. Gunda's

7    opinion covers medical records from June 6, 2016, to at least May 20, 2019, the date of the ALJ's

8    decision).   The supplemental records indicate that the leg swelling and ulceration for which

9    Plaintiff sought treatment at Dignity Health in August 2016 (as identified in the administrative

10   record), for example, constituted an ongoing medical issue potentially arising in October 2015,

11   addressed at OMNI in June 2016, requiring a hospital admission in March 2017, and receiving

12   continued assessment in June 2017.   Plaintiff's mental health issues are addressed in the ONMI

13   records spanning nearly three years.   Thus, consideration of the supplemental evidence in

14   combination with the records previously incorporated into the administrative record, in total, may

15   reasonably result in a different assessment of the severity of Plaintiff's impairments by the ALJ,

16   and his determination as to whether they qualify as a disability under the Regulations.

17        Importantly, "[i]n assessing RFC, the adjudicator must consider limitations and

18   restrictions imposed by all of an individual's impairments [because] limitations due to . . . a 'not

19

---

20   even in the new records, it is apparent that Plaintiff missed at least one appointment, failed to strictly take all of his
     psychotropic medications, and there remains a general scarcity of medical records.   (See ECF No. 22 at 6–7.)

21   Defendant argues Plaintiff's non-compliance goes to credibility and therefore supports the ALJ's discounting of
     Plaintiff's symptom testimony.   However, both Plaintiff and Ms. Bispo's testimony at the hearing and Plaintiff's

22   supplemental records contain patient complaints and third-party reports that Plaintiff missed some appointments
     because his anxiety and agoraphobia prevented him from leaving the house that day; Plaintiff was also unable to seek

23   additional treatment at times because his family could not afford it when the medical provider refused to accept their
     insurance.  These notes in the supplemental records suggest discounting Plaintiff's testimony for credibility reasons is

24   improper where the scarcity of treatment may have instead been a consequence of Plaintiff's mental health
     impairments and/or financial situation.   See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (noting

25   "mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing
     necessary evidence"); Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) ("Disability benefits may not be denied

26   because of the claimant's failure to obtain treatment he cannot obtain for lack of funds."); see also Trevizo v.
     Berryhill (9th Cir. 2017) 871 F.3d 664, 681–82 (finding discount of symptom testimony because claimant's

27   inconsistent answers suggested lack of credibility was not "clear and convincing" where it was also acknowledged
     that claimant's inability to answer questions could be related to her possible borderline intellectual functioning).  As

28   such, the conflict would need to be addressed by the ALJ in subsequent findings, and it is reasonably possible that
     resolution of this conflict would result in a different determination of disability.

severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); see also SSR 96-8p, 1996 WL 374184, at *5. Plaintiff has stressed that his mental health impairments are the most debilitating with respect to his condition.  Indeed, many of Plaintiff's physical impairments previously considered by the ALJ appear to be related to or arising from Plaintiff's mental health impairments.  For example, Plaintiff has testified to having a very severe anxiety/obsessive-compulsive need to constantly vacuum, then mop, then vacuum again, clean and sanitize all areas in the home, every day. Plaintiff's leg ulcer was reportedly developed after a vacuum injury, which may have arisen from Plaintiff's obsessive need to constantly vacuum.  (See AR 443.)  Plaintiff's extreme weight loss in 2018 similarly appears to be a direct consequence of loss of appetite arising from Plaintiff's anxiety and OCD.  For this reason, as well, the Court finds there is a reasonable possibility that the inclusion of Plaintiff's supplemental records would have changed the outcome of the disability determination.

In sum, the Court concludes Plaintiff has sufficiently met his burden of establishing the Appeals Council should have considered his supplemental records pursuant to § 416.1470(a)(5). See 20 C.F.C. §§ 404.970, 416.1470.  Accordingly, remand is warranted.  Taylor, 659 F.3d at 1233.

## D.    Remand

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. Varney v. Sec'y of Health & Human Serv., 859 F.2d 1396, 1399 (9th Cir. 1988).

The Court has determined there is a reasonable probability that the cumulative weight of Plaintiff's supplemental medical records, Dr. Gunda's medical source statement, and the original administrative record would change the outcome of the decision.  Consideration of these additional records could impact other aspects of the ALJ's decision, such as evaluation of the medical evidence, determination of the severity of all of Plaintiff's impairments (mental and physical) and the combination thereof, evaluation of Plaintiff's credibility, as well as the determination of Plaintiff's physical and mental RFC, and consequently the ultimate determination of whether Plaintiff is able to perform work in the national economy.[8]  Therefore, the matter should be remanded for the ALJ to re-evaluate the entirety of the medical evidence, fully develop the record regarding Plaintiff's mental as well as physical impairments, and identify legally sufficient grounds to support his decision.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court finds Plaintiff's supplemental medical records are new, material, relate to the period on or before the date of the ALJ's hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's request for review of the ALJ's decision (ECF No. 20) is GRANTED;

2.      The matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

///

---

[8] For example, according more weight to Plaintiff's testimony regarding his extreme OCD and anxiety arising from sanitary and cleanliness issues may alter the ALJ's prior determination that Plaintiff had the capacity to work as a "laundry laborer" or "industrial cleaner/sweeper."  According more weight to Plaintiff's testimony of agoraphobia would likely impact the ALJ's determination of how reliably Plaintiff could leave his home to go to a job.  In another example, if the ALJ credits Plaintiff's testimony of having no friends or visitors and even avoiding his family members, he may reasonably issue a different decision regarding Plaintiff's capacity to interact with supervisors and coworkers.

3. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Anthony Bispo and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 20, 2022**

_____
UNITED STATES MAGISTRATE JUDGE